Curia, per O’Neall, J.
The three first grounds of appeal are upon supposed errors of the verdict, in matters of fact; it is enough to say in relation to them that the evidence was abundant, and very satisfactory to my mind, to sustain the conclusion to which the jury came. The 4th and 5th grounds present the only legal question in the case, whether the bringing up the slaves under the writ of habeas corpus issued by the Chief Justice of Bermuda, and the discharge of them by him from the custody of the master of the vessel, i within the risks enumerated in the policy, viz: “ arrests, restraints, and detainments, of all kings, princes, or people, of what nation, condition, or quality soever.” For if this question be answered in the affirmative, then the loss cannot be referred to an escape, which is an excepted peril; the words, “ arrests, restraints, and detainments, of all kings, princes, or people, of what nation, condition, or quality soever,” are broad enough to cover every possible detention, legal or illegal, by color of law, or without it. Had it not been for the case of Nesbitt vs. Lustington, 4 T. R. 783, I should not have hesitated *243 to say, that any detention in fact, was within the perils insured against. But that Gase beld a mere riotous detention of a vessel by a mob — and the consequent breaking up of ber cargo, not to be a detention within the meaning of the policy. It appears that the detention, to be within the policy, must be a capture, seizure, or detention, by the officer or agent of of some government in fact; Ph. on Ins., 259. It is true, that Mr. Phillips says, that it must be by the commissioned officers or agents of some lawful and acknowledged government. But this cannot be true — for, whenever a government in fact exists, whether lawful or unlawful, acknowledged or unacknowledged, it has the physical power to compel obedience to its commands, and its officers or agents axe supposed to act by its authority, and therefore the assured has no remedy for bis loss against them. This, however, need not be noticed for the purposes of this case — for, taking the doctrine to be as stated by Mr. Phillips, the detention here would be one of the risks enumerated in the policy; for the slaves were taken, and detained from the custody of the master, by a writ issued by the Chief Justice of Bermuda, the officer of an acknowledged and lawful government, viz.: that of Great Britian.
The master of a vessel was bound to yield obedience to the writ of habeas corpus ; be bad not the power to resist its mandate ; and if be bad, be would not have been justified in so doing — for it is the duty of all persons within the jurisdiction of a country to observe its laws, and yield to its legal and proper process; and any other rule would lead to continued insubordination, and the exercise of physical force. Whether the subsequent discharge of the slaves by the Chief Justice was according to or against the laws of Great Britian, cannot now be inquired into. It was an act done in a course of justice and by the judgment of a Court exercising a competent jurisdiction. It is hence to be presumed that it was done according to their law, although it must be conceded by every one having the least acquaintance with national comity, that it was in direct violation of its first principles. It is true, that most of the cases of restraints and detention reported in the books, are captures in time of war, and seizure under political regulations. But it does not hence follow, that a detention by judicial process is not an enumerated risk. It, *244 as well as the others, is the act of an officer of the government acting under its authority, and executing its laws.
The motion is dismissed.